## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **CHARLES C. MCCOY,** | ) | |
| Plaintiff | ) | Civil Action No. 2:18cv00046 |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **ANDREW SAUL,**[1] | ) | By: Pamela Meade Sargent |
| **Commissioner of Social Security,** | ) | United States Magistrate Judge |
| Defendant | ) | |

### I. Background and Standard of Review

Plaintiff, Charles C. McCoy, ("McCoy"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2011, West 2012 & Supp. 2019). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d

---

[1] Andrew Saul became the Commissioner of Social Security on June 17, 2019; therefore, he is substituted for Nancy A. Berryhill as the defendant in this case.

514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that McCoy protectively filed his applications for DIB and SSI on May 20, 2013, alleging disability as of December 1, 2015,[2] due to back and hip pain, problems with his knees, hands and shoulders and depression. (R. at 43, 253-54, 259-62, 296, 300, 329.) The claims were denied initially and upon reconsideration. (R. at 151-52, 160-62, 164-69, 171-73, 197-99.) McCoy then requested a hearing before an ALJ. (R. at 174-75.) The ALJ held a hearing on June 14, 2017, at which McCoy was represented by counsel. (R. at 67-95.)

By decision dated August 21, 2017, the ALJ denied McCoy's claims. (R. at 43-61.) The ALJ found that McCoy met the nondisability insured status requirements of the Act for DIB purposes through September 30, 2018. (R. at 46.) The ALJ found that McCoy had not engaged in substantial gainful activity since December 1, 2015, the alleged onset date. (R. at 46.) The ALJ found that the medical evidence established that McCoy had severe impairments, namely lumbar spine degenerative changes; mild spondylosis in the cervical spine; right shoulder

---

[2] McCoy initially alleged a disability onset date of January 31, 2012, and August 1, 2012; however, at his hearing, he amended his alleged onset date to December 1, 2015. (R. at 43, 71, 253, 259.)

impairment; and migraine headaches, but he found that McCoy did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 46-47.) The ALJ found that McCoy had the residual functional capacity to perform light work[3] that required no more than occasional climbing, kneeling, crouching, crawling and performance of overhead reaching; and that did not require concentrated exposure to extreme cold, wetness, vibration, machinery and unprotected heights. (R. at 48.) The ALJ found that McCoy was unable to perform his past relevant work. (R. at 59.) Based on McCoy's age, education, work history and residual functional capacity, and the testimony of a vocational expert, the ALJ found that a significant number of other jobs existed in the national economy that McCoy could perform, including jobs as an order caller, a furniture rental clerk and a laundry classifier. (R. at 59-60.) Thus, the ALJ concluded that McCoy was not under a disability as defined by the Act and was not eligible for DIB or SSI benefits. (R. at 61.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2018).

After the ALJ issued his decision, McCoy pursued his administrative appeals, (R. at 251, 370-72), but the Appeals Council denied his request for review. (R. at 1-6.) McCoy then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2018). This case is before this court on McCoy's motion for summary judgment filed May 14, 2019, and the Commissioner's motion for summary judgment filed June 7, 2019.

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2018).

## II. Facts[4]

McCoy was born in 1978, (R. at 253, 259, 296), which classifies him as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). McCoy obtained his general education diploma, ("GED"), and he has past relevant work as a palletizer operator, a roof bolter and a heavy equipment operator. (R. at 72, 89, 301.)

Marilyn J. Stroud, a vocational expert, was present and testified at McCoy's hearing. (R. at 88-93, 349-51.) Stroud was asked to consider a hypothetical individual of McCoy's age, education and work history, who had the residual functional capacity to perform light work; who could occasionally climb, kneel, crouch, crawl and reach overhead; and who must avoid concentrated exposure to extreme cold, wetness, vibration, hazardous machinery and unprotected heights. (R. at 90.) Stroud stated that such an individual could not perform McCoy's past work; however, she stated that such an individual could perform other jobs that existed in significant numbers in the national economy, including those of an order caller, a furniture rental clerk and a laundry classifier. (R. at 90-91.) Stroud was asked to consider the same individual, but who would be limited to sedentary[5] work; who could never reach overhead; who could occasionally handle, finger and feel; and who required a sit/stand option that allowed him to stand for no more than one hour at a time. (R. at 91.) Stroud stated that such an individual could not perform

---

[4] McCoy's only dispute is with respect to the ALJ's assessment of his physical limitations. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 4-5.) Therefore, the court will address the facts relevant to McCoy's physical health.

[5] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2018).

McCoy's past work; however, she stated that such an individual could perform other jobs that existed in significant numbers in the national economy, including those of a surveillance monitor, an election clerk and a credit card call-out operator. (R. at 91-92.) Stroud was asked to consider hypothetical individual number two, but who would be absent from work more than twice a month; who could stand or walk a total of one hour a day with a sit/stand option; who could sit for no more than one hour total; who could occasionally stoop, balance, reach and handle; and who could never crouch or crawl. (R. at 93.) She stated that there would be no jobs available that such an individual could perform. (R. at 93.)

In rendering his decision, the ALJ reviewed records from Norton Community Hospital; Dr. Gene Godwin, M.D., a state agency physician; Dr. Samuel P. Deel, D.O.; Mountain View Regional Medical Center, ("Mountain View"); Dr. Tihomir Tochev, M.D.; Dr. Edmund T. Vu, D.O.; Wellmont Bristol Regional Medical Center; Sapling Grove Surgery Center; Pain Medicine Associates, P.C.; and Dr. Gurcharan S. Kanwal, M.D. McCoy's counsel also submitted additional medical reports from Paige Cordial, Psy.D., a licensed clinical psychologist, to the Appeals Council.[6]

In June 2006, McCoy fractured his left hand while working in a coal mine. (R. at 430-36.) He underwent an open reduction internal fixation on the left hand for treatment of traumatic fractures of the left second and third metacarpals. (R. at 433-34.) Subsequent x-rays of McCoy's left hand revealed that his factures had healed

---

[6] Since the Appeals Council considered and incorporated this additional evidence into the record in reaching its decision, (R. at 1-6), this court also must take these new findings into account when determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991).

well. (R. at 442.) In March 2007, an electromyography, ("EMG"), and nerve conduction study revealed normal results. (R. at 468.)

On June 1, 2007, McCoy saw Dr. Navneet Gupta, M.D., a physician with Pain Medicine Associates, P.C., for complaints of left hand pain. (R. at 470-71.) In addition to pain, he described intermittent numbness in the left fingers, weakness and loss of grip strength in the left hand. (R. at 470.) McCoy reported that Percocet diminished his pain symptoms. (R. at 470.) McCoy had active range of motion in all joints of his left upper extremity, including his hand and finger joints. (R. at 471.) Dr. Gupta diagnosed left hand pain, which could possibly include reflex sympathetic dystrophy. (R. at 471.) On July 16, 2007, a cervical epidural sympathectomy and fluoroscopy was not suggestive of "sympathetically maintained pain." (R. at 423-25.) Dr. Timothy Smyth, M.D., concluded that McCoy's ongoing symptoms were "[l]ikely entirely mechanical and residual myofascial pain." (R. at 424.) Subsequent x-rays of McCoy's left hand revealed old healed fractures. (R. at 448-49.) On August 17, 2007, McCoy fractured his right hand and underwent surgery. (R. at 443-47.) On September 11, 2007, x-rays of McCoy's right hand showed no complications. (R. at 450.)

On February 7, 2008, McCoy complained of chronic pain affecting both hands. (R. at 453.) He reported that he was able to take care of himself independently. (R. at 453.) Dr. Gupta noted decreased active range of motion in the metacarpal phalangeal joint in McCoy's left hand, leading to a decreased cylindrical grasp. (R. at 453.) Dr. Gupta diagnosed chronic pain affecting both hands. (R. at 453.) On February 26, 2008, McCoy reported that he was seeking new employment after being terminated from his previous job. (R. at 467.) Dr. Gupta noted decreased

active range of motion in all the metacarpal phalangeal joints in McCoy's left hand, leading to a decreased cylindrical grasp. (R. at 467.) Dr. Gupta diagnosed chronic pain affecting both hands. (R. at 467.)

On June 18, 2008, Dr. Gupta observed diminished grip strength, but a normal range of motion in his left hand and left upper extremity. (R. at 462.) Dr. Gupta opined that McCoy had no restrictions on his ability to return to work, but he limited McCoy to lifting items weighing no more than 10 pounds with his left hand above waist or shoulder level on a constant basis. (R. at 462.)

On October 8, 2008, an EMG and nerve conduction velocity study revealed normal results in McCoy's upper left extremity. (R. at 459-60.) On December 31, 2008, McCoy reported that his pain was tolerable with medication and that his quality of life was much improved with medication management. (R. at 456.) McCoy reported that he continued to work in a coal mine. (R. at 456.) He reported no new significant areas of pain or discomfort. (R. at 456.) A pill count showed that McCoy was six pills short. (R. at 456.) McCoy was diagnosed with chronic hand pain, history of second and third metacarpal fracture and opioid tolerance. (R. at 456.)

On February 26, 2009, Dr. W. Turney Williams, M.D., a physician with Pain Medicine Associates, P.C., reported unremarkable examination findings. (R. at 455.) McCoy tested positive for oxycodone and buprenorphine, and Dr. Williams opined that McCoy did not require long-term narcotic pain medication. (R. at 455.) The record does not document further visits to the pain clinic.

On February 21, 2011, McCoy presented to the emergency room at Norton Community Hospital complaining of headaches. (R. at 32-34, 489-90.) McCoy appeared anxious and depressed, but examination findings were otherwise normal. (R. at 33, 490.) He was diagnosed with migraine headaches, anxiety and depression. (R. at 33, 490.)

On September 16, 2013, McCoy established care with Dr. Samuel P. Deel, D.O., reporting that he was unable to work due to pain in the lower left lumbar area and left hip. (R. at 377-79.) Examination of McCoy's neck revealed no abnormality; his musculoskeletal system appeared generally normal; his lumbar spine and hips showed no abnormalities; no sensory abnormalities were noted; his motor examination demonstrated no dysfunction; his reflexes were normal; and his mood was euthymic. (R. at 378.) Dr. Deel diagnosed lumbago and ordered an MRI of McCoy's lumbar spine. (R. at 379.)

On August 27, 2014, McCoy began treating with Dr. Tihomir Tochev, M.D., for complaints of back and neck pain, shooting pain in his shoulder and numbness in his arm. (R. at 413.) On November 19, 2014, McCoy reported that he could not turn his neck to the right. (R. at 411.) He acknowledged taking Suboxone to deal with the pain. (R. at 411.) McCoy had tenderness and decreased range of motion in his neck, shoulder and spine. (R. at 411.) Dr. Tochev diagnosed cervicalgia. (R. at 411.) In June 2015, McCoy complained of hip and knee pain. (R. at 409.) On October 18, 2015, at his routine follow-up appointment, McCoy had no new complaints or concerns. (R. at 408.)

On December 16, 2014, an MRI of McCoy's lumbar spine showed small annular tears with no neural compromise and two small rounded foci of abnormal signal at the right kidney, probably small cysts. (R. at 380.) An MRI of McCoy's cervical spine showed mild multilevel spondylosis with no significant neural compromise. (R. at 381-83.)

On January 15, 2015, Dr. Tochev completed a medical assessment, indicating that McCoy could lift and carry items weighing five pounds;[7] stand and/or walk up to 30 minutes without interruption; sit up to 30 minutes both in an eight-hour workday and without interruption; occasionally climb, stoop, kneel, balance, crouch and crawl; he had a limited ability to reach, handle, push and pull; and he was restricted from working around heights, moving machinery, temperature extremes, noise, humidity and vibration. (R. at 392-94.) Dr. Tochev opined that McCoy would be absent from work more than two days a month. (R. at 394.)

On March 17, 2015, McCoy presented to Dr. Tochev for a checkup and medication refills, reporting no new complaints. (R. at 410.) A physical examination was essentially unremarkable, with no findings being documented regarding McCoy's neck, shoulders, back, hips, hands or knees. (R. at 410.)

On April 18, 2015, Dr. Edmund T. Vu, D.O., examined McCoy at the request of Disability Determination Services. (R. at 396-99.) McCoy stated that he was unable to work due to cervical and lumbar spine pain, right hip pain and right knee pain. (R. at 396.) He stated that he was independent with his activities of daily

---

[7] Dr. Tochev based this restriction on advanced degenerative disc disease of the cervical and lumbar spine and chronic rotator cuff syndrome. (R. at 392.)

living. (R. at 396.) McCoy ambulated without assistance; he had no muscle asymmetry, atrophy or involuntary movements; he had no structural deformity, effusion, periarticular swelling, erythema, heat, swelling or tenderness of any joint; he had tenderness to palpation along the L3-L5 levels of the lumbar spine; his right knee was negative for valgus/varus stress pain; he was able to rise from a sitting position without assistance; he could stand on his tiptoes, heels and tandem walk without problems; he was able to bend and squat with minimal difficulty; he had full grip strength with adequate fine motor movements, dexterity and could grasp objects bilaterally; his extremities had no edema, cyanosis or erythema; he was able to communicate without deficits; his recent and remote recall was intact; he had good insight and cognitive function; he did not appear to be depressed or anxious; he had strong neck movement against resistance and good shoulder shrug; his motor examination showed good tone and strength in all muscle groups; and he had normal reflexes and intact sensation. (R. at 397-98.) Dr. Vu diagnosed back pain/lumbago, tobacco abuse and knee pain, possibly referred from the back. (R. at 398.) Dr. Vu opined that McCoy could sit for a full workday; lift and carry items weighing less than 10 pounds; hold a conversation; respond appropriately to questions; and carry out and remember instructions. (R. at 398.)

On April 23, 2015, Dr. Gene Godwin, M.D., a state agency physician, opined that McCoy had the residual functional capacity to perform light work. (R. at 119-21.) Dr. Godwin found that McCoy could occasionally climb, balance, stoop, kneel, crouch, crawl and reach overhead. (R. at 119-20.) No visual or communicative limitations were noted. (R. at 120.)  Dr. Godwin opined that McCoy should avoid concentrated exposure to extreme cold, wetness, vibration and hazards. (R. at 120-21.)

On June 16, 2015, McCoy presented to Dr. Tochev for a checkup and medication refills. (R. at 409.) McCoy complained of hip and knee pain. (R. at 409.) A physical examination showed no new findings. (R. at 409.) At his follow-up appointments with Dr. Tochev in August and October 2015, no new complaints or concerns were documented, and McCoy remained "self-employed." (R. at 404, 408.)

On December 10, 2015, Dr. Tochev completed a medical assessment, indicating that McCoy could occasionally lift and carry items weighing five pounds and frequently lift and carry items weighing three pounds;[8] stand and/or walk both a total of one hour in an eight-hour workday and without interruption; sit both a total of one hour in an eight-hour workday and without interruption; occasionally climb, stoop, kneel and balance and never crouch and crawl; he had a limited ability to reach, to handle and to push and pull; and he was restricted from working around heights, moving machinery, temperature extremes, humidity and vibration. (R. at 400-02.) Dr. Tochev opined that McCoy would be absent from work more than two days a month. (R. at 402.)

On January 7, 2016, x-rays of McCoy's right shoulder showed no evidence of acute osseous abnormality. (R. at 405.) On June 16, 2016, McCoy indicated that his pain medication relieved 60 percent of his pain, which Dr. Tochev determined was "clinically significant." (R. at 406.)

---

[8] Dr. Tochev based these limitations on a right shoulder rotator cuff injury and advanced degenerative disc disease of the cervical and lumbar spine with radiculopathy. (R. at 400.)

On March 17, 2017, McCoy saw Dr. Gurcharan S. Kanwal, M.D., for complaints of back, neck, feet and left leg pain. (R. at 415-18.)  He reported consuming alcoholic beverages on a nightly basis to relieve his pain. (R. at 415.) Dr. Kanwal administered steroid injections and recommended that McCoy stop consuming alcohol. (R. at 418.) On April 5, 2017, McCoy complained of chronic, persistent pain in the low back, bilateral hip, right shoulder and neck pain. (R. at 420.) Physical examination showed "multi-site tenderness." (R. at 420.) Dr. Kanwal prescribed medication to treat McCoy's back, hip, neck and right shoulder pain. (R. at 420.)

On October 31, 2017, Paige Cordial, Psy.D., a licensed clinical psychologist, evaluated McCoy at the request of McCoy's attorney. (R. at 10-18.) Cordial opined that McCoy was "obviously in pain," but exhibited adequate concentration, no significant memory problems, average intelligence, no signs of psychosis, good insight and judgment, linear and logical thought patterns and normal speech. (R. at 10.) Based on McCoy's self-reports and his responses to the Personality Assessment Inventory, Second Edition, ("PAI-II"); the Beck Depression Inventory, Second Edition, (BDI-II"); and the Burns Anxiety Inventory, Cordial diagnosed major depressive disorder, recurrent episodes, severe without psychotic features; and generalized anxiety disorder. (R. at 14-17.)

On December 11, 2017, Cordial completed a mental assessment, indicating that McCoy had no limitations on his ability to follow work rules. (R. at 19-22.) She opined that McCoy had mild limitations on his ability to use judgment; to function independently; to understand, remember and carry out simple and detailed instructions; and to maintain personal appearance. (R. at 19-20.) Cordial found that

McCoy had a satisfactory ability to relate to co-workers; to deal with the public; to interact with supervisors; to maintain attention and concentration; to understand, remember and carry out complex job instructions; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. (R. at 19-20.) She found that McCoy had a seriously limited ability to deal with work stresses. (R. at 19.) She also opined that McCoy's impairments would cause him to miss two or more days of work a month. (R. at 22.)

### III. Analysis

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2018). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920.  If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2018).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age,

education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2011 & West 2012); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

McCoy argues that substantial evidence does not exist in the record to support the ALJ's finding that he was not disabled. (Plaintiff's Brief at 4-5.) In particular, McCoy argues that the ALJ erred by rejecting the evidence and opinions of Dr. Tochev and Dr. Vu. (Plaintiff's Brief at 4-5.)

McCoy argues that the ALJ erred by failing to properly weigh the medical evidence. (Plaintiff's Brief at 4-5.) In particular, McCoy argues that the ALJ erred by failing to give full consideration to the assessments of his treating physician, Dr. Tochev, and consultative examiner, Dr. Vu. (Plaintiff's Brief at 4-5.) It is the ALJ's

responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor*, 528 F.2d at 1156. Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(c), 416.927(c), if he sufficiently explains his rationale and if the record supports his findings.

It is well-settled that, in determining whether substantial evidence supports the ALJ's decision, the court must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co.*, 131 F.3d at 439-40. "[T]he [Commissioner] must indicate explicitly that all relevant evidence has been weighed and its weight." *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979). "The courts … face a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence. Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977) (quoting *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974)).

McCoy's attorney submitted an October 2017 evaluation report and a December 2017 assessment from psychologist Cordial to the Appeals Council. (R.

at 1-6, 10-22.) The Appeals Council specifically incorporated Cordial's opinions into the administrative record. As noted above, since the Appeals Council considered and incorporated this additional evidence into the record in reaching its decision, this court also must take these new findings into account when determining whether substantial evidence supports the ALJ's findings. *See Wilkins,* 953 F.2d at 96. The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review if the additional evidence constitutes "new [and] material" evidence that "relates to the period on or before the date of the hearing decision," and there is a "reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (2018); *see also Meyer v. Astrue*, 662 F.3d 700, 704-05 (4th Cir. 2011). The Appeals Council reviewed this evidence and decided that it did not relate to the period at issue; therefore, it did not affect the ALJ's decision. (R. at 2.) I agree.

The ALJ noted that McCoy alleged depression and testified that "it's depressing" to think about his physical impairments; however, he did not mention that mental impairments prevented him from working. (R at 47, 87-88, 94, 377-79, 396.) The record shows that McCoy was diagnosed with anxiety and depression after being seen at the emergency room for complaints of headaches in February 2011; however, he was not prescribed psychotropic medication, nor was he referred for psychiatric treatment. (R. at 33, 490.) In April 2015, Dr. Vu reported that McCoy was alert, oriented and cooperative; he did not appear depressed or anxious; he was able to communicate with no deficits; his recent and remote memory were intact; he displayed good insight and cognitive function, good fund of information; and he had appropriate thought content. (R. at 397.) Based on this, I find that substantial

evidence exists to support the ALJ's finding that McCoy did not suffer from a severe mental impairment.

The ALJ found that McCoy had the residual functional capacity to perform light work that required no more than occasional climbing, kneeling, crouching, crawling and performance of overhead reaching; and that did not require concentrated exposure to extreme cold, wetness, vibration, machinery and unprotected heights. (R. at 48.) As noted above, McCoy's only dispute is with respect to the ALJ's assessment of his physical limitations. (Plaintiff's Brief at 4-5.)

In making this residual functional capacity finding, the ALJ stated that he was giving Dr. Vu's assessment "little weight" because it was not well supported by the record and was inconsistent with his own examination findings. (R. at 57.) The ALJ noted that Dr. Vu's examination showed only a few abnormalities, most notably, tenderness in the lumbar spine. (R. at 57, 397.) Dr. Vu noted that McCoy exhibited intact motor and sensory function throughout, normal gait and normal grip strength and manipulative abilities. (R. at 57, 397-98.)

The ALJ stated that he was giving "little weight" to Dr. Gupta's 2008 opinion because it was formed based on McCoy's signs and symptoms more than seven years before McCoy's amended alleged onset date. (R. at 57.) The ALJ noted that McCoy performed work at the medium[9] exertion level between 2008 and 2015. (R. at 57.) Furthermore, as noted by the ALJ, McCoy reported that he had recovered from his left hand injury for the most part. (R. at 57-58, 377.) EMG and nerve

---

[9] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2018).

conduction velocity studies performed in March 2007 and October 2008 were normal. (R. at 459-60, 468.) A physical examination performed on April 18, 2015, revealed that McCoy had a normal gait; he was able to rise from a sitting position without assistance; he could bend and squat with minimal difficulty; he had full grip strength and adequate fine motor movements, dexterity and ability to grasp objects bilaterally; and he had normal range of motion throughout, with the exception of 10 degrees loss of lumbar extension and shoulder abduction to 100 out of 150 degrees. (R. at 397, 399.) McCoy reported meaningful relief of his pain with medication management. (R. at 406.)  "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986).

The ALJ also gave "little weight" to Dr. Tochev's opinions because they were not supported by the evidence of record. (R. at 58.) Dr. Tochev documented rather limited findings. For instance, in September 2014, Dr. Tochev noted some tenderness in McCoy's lower back, but normal strength and range of motion and negative straight leg raising tests. (R. at 412.) Dr. Tochev noted on several occasions that McCoy was "self-employed," which, as noted by the ALJ, was inconsistent with his assertion that McCoy was unable to perform even sedentary work. (R. at 58, 400-02, 408-09, 411-12.) An ALJ may discount a physician's opinion when it conflicts with his medical evidence, particularly the physician's own treatment notes. *See Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) ("if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight").

The ALJ noted that he was giving "some weight" to the opinion of the state agency physician because his findings concerning McCoy's exertional, environmental and overhead reaching limitations were well supported and consistent with the totality of the evidence. (R. at 57.) While the ALJ, in general, is required to give more weight to opinion evidence from examining versus nonexamining medical sources, the ALJ is not required to give controlling weight to the opinions of a consultative examiner. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (2018). In fact, even an opinion from a treating physician will be accorded significantly less weight if it is "not supported by clinical evidence or if it is inconsistent with other substantial evidence…." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). Furthermore, the ALJ is entitled to rely on a nonexamining source's medical opinion where that opinion is supported by the record as a whole. *See Alla Z. v. Berryhill*, 2018 WL 4704060, at *11 (W.D. Va. Sept. 30, 2018); *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (2018). The state agency physician found that McCoy could perform light work with occasional postural maneuvers, consistent with the ALJ's decision. (R. at 48, 119-21.)

Based on this, I find that substantial evidence exists to support the ALJ's weighing of the medical evidence and his finding with regard to McCoy's residual functional capacity.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.    Substantial evidence exists in the record to support the

ALJ's weighing of the medical evidence;

2.   Substantial evidence exists in the record to support the ALJ's findings as to McCoy's residual functional capacity; and

3.   Substantial evidence exists in the record to support the Commissioner's finding that McCoy was not disabled under the Act and was not entitled to DIB and SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny McCoy's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2018):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:     October 29, 2019.

s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE